UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL C.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. 3:20-cv-05584-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

    Plaintiff appeals the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ erred by (1) finding carpal tunnel syndrome to be a non-severe impairment and therefore failing to assess work restrictions arising from the impairment; (2) failing to provide specific and legitimate reasons for discounting the opinion of examining psychologist Dan Neims, Psy.D.; (3) failing to explain a departure from the opinion of examining psychiatrist, April DeLira, M.D., despite finding the opinion to be persuasive; (4) failing to discuss the opinions of examining orthopedic surgeon, Lynn Staker, M.D.; (5) failing to explain the departure from the non-examining opinion of Derek Leinenbach, M.D., despite finding the opinion to be persuasive; and (6) failing to provide specific, clear and convincing reasons for discounting plaintiff's symptom allegations. Dkt. 9. As discussed below,

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 1

the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 46 years old, attended some high school, and has worked primarily as a tow truck driver. Tr. 44–45. In October 2017, he applied for benefits, alleging disability as of April 13, 2017. Tr. 273–80. In May 2019, the ALJ conducted a hearing. The ALJ found that plaintiff met the insured status requirements through June 30, 2022, had not engaged in substantial gainful activity since the alleged onset date in April 2017, and has the severe impairments of major depressive disorder, left elbow degenerative joint disease, left wrist degenerative joint disease, degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, and fibromyalgia. Tr. 17–18. The ALJ assessed a residual functional capacity ("RFC") of sedentary work with additional physical and mental limitations. Tr. 22. The ALJ found that plaintiff could not perform past relevant work but could perform jobs that exist in significant numbers in the national economy. Tr. 28. The ALJ therefore found plaintiff to be not disabled. Tr. 29–30. The Appeals Council denied plaintiff's request for review so the ALJ's decision is the Commissioner's final decision. Tr. 12–14.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff has failed to demonstrate that the ALJ's decision was unreasonable, unsupported by substantial evidence, or the result of harmful legal error with respect to evaluating carpal tunnel syndrome, the medical evidence, and plaintiff's testimony. The Court affirms the Commissioner's final decision and dismisses the case with prejudice.

**1. Carpal Tunnel Syndrome as Non-Severe Impairment**

Plaintiff contends that the ALJ harmfully erred by determining that plaintiff's right arm carpal tunnel syndrome was not a severe impairment. Dkt. 9, at 2–4. The Court disagrees.

The ALJ acknowledged that plaintiff demonstrated moderate right carpal tunnel syndrome via a February 2018 EMG and an April 2018 examination. Tr. 19 (citing Tr. 876, 886–87). Nevertheless, the ALJ noted that while plaintiff showed positive Durkan and Tinel's signs, he also had a negative Phalen's test and a negative ulnar nerve test. *Id.* (citing Tr. 876). The ALJ further noted that his physician prescribed a wrist brace to wear at night and discussed surgical options, but that plaintiff never followed up regarding surgery. *Id.* (citing Tr. 874, 877). The ALJ consequently did not identify right carpal tunnel syndrome as a severe impairment and did not specify physical RFC limitations related to right carpal tunnel syndrome except by restricting plaintiff to sedentary work and occasional reaching bilaterally. Tr. 17–18, 22.

If, as here, step two is resolved in a claimant's favor, any error in listing severe impairments can be harmful only if the ALJ erred in analyzing the later steps. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). The proper inquiry therefore is whether the ALJ failed to account for limitations stemming from plaintiff's right carpal tunnel syndrome by assessing sedentary work with a limit to occasional reaching bilaterally. On this count, any error made by the ALJ was harmless because plaintiff's sparse references to right carpal tunnel syndrome do not suggest physical limitations beyond those assessed in the RFC.

In his application for benefits plaintiff did *not* refer to any limitations in the functionality of his right arm, specifying that his disability stemmed from (1) depression; (2) back issues; (3) left arm issues; and (4) nerve pain. Tr. 314. Responding to how his conditions limited his ability to work, plaintiff referred to "[l]imited mobility and pain in left arm and wrist," lower back pain, and "nerve pain from neck to tailbone." Tr. 296. Contrary to the briefing, plaintiff did *not* testify that right carpal tunnel syndrome caused him to have difficulty gripping things and to drop things. Dkt. 9, at 3. Rather, plaintiff referred to those difficulties in specific response to the ALJ's question about how the pain affected his *left* arm and *left* hand. Tr. 71. Plaintiff then testified that although his left hand and left arm pain was over 20 years old, his right carpal tunnel syndrome was diagnosed only a year before the hearing date. *Id.* Thus, the full extent of any limitations due to right carpal tunnel syndrome come from plaintiff's statements in an April 2018 medical visit in which he presented "for numbness, tingling involving the right hand" and "denie[d] pain" even though the condition had persisted for about three years, i.e., since approximately two years before his alleged onset date of disability. Tr. 629.

The Court finds that it was reasonable for the ALJ to infer that plaintiff's right carpal tunnel syndrome was not a severe impairment given plaintiff himself did not refer to his right arm as affecting his ability to work, the lack of evidence of functional limitations stemming from right carpal tunnel syndrome, and symptoms from right tunnel syndrome preceding his alleged onset date by two years. The reasonableness of that inference is not undermined by plaintiff's references to his physician discussing surgery to remedy right carpal tunnel syndrome that had affected him for three years despite bracing, Tr. 629, 632; to plaintiff speaking generally about having difficulty pouring coffee after detailing his problems using his *left* hand and *left* arm, Tr. 71, 74; and to plaintiff's checkbox response that he had difficulty "Using Hands" in the same

report in which his physical complaint was "[l]imited mobility and pain in left arm and wrist," Tr. 296, 301. To the extent the ALJ erred by failing to find right carpal tunnel syndrome to be a severe impairment, that error was thus harmless.

Plaintiff has failed to demonstrate that the ALJ's decision to find right carpal tunnel syndrome to be a non-severe impairment was unsupported by substantial evidence or the result of harmful legal error.

**2. Examining Psychologist Dr. Neims**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of examining psychologist Dr. Neims. Dkt. 9, at 4–7. The Court disagrees because plaintiff cannot demonstrate how the assessed RFC conflicts with Dr. Neims's opinion.

When considering medical opinions (filed on or after March 27, 2017), the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in his decision how persuasive he finds a medical opinion(s) and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he considered the other remaining factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). And the new regulations eliminate the agency's "treating source rule," which gave special deference to treating doctors' opinions. 82 Fed. Reg. at 5853.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 5

  The ALJ found Dr. Neims's opinion to be mildly persuasive because it was both supported by findings and consistent with other evidence in the record. Tr. 27, 379–82. Dr. Neims assessed plaintiff with only mild or moderate limitations in performing basic work activities. Tr. 380–81. Overall, Dr. Neims assessed limitations of moderate severity and noted that vocational training or services would minimize or eliminate barriers to employment. Tr. 381.

  Although plaintiff contends that the ALJ failed to incorporate Dr. Neims's assessed limitations into the RFC, he is unable to specify what limitations would have led to changes in the RFC. The ALJ's RFC could be reasonably interpreted as incorporating all of Dr. Neims's assessed mild and moderate limitations by applying environmental, postural, and reaching restrictions as well as mental restrictions on the capacity to understand, remember, and apply detailed, but not complex, instructions and work that was not in a fast-paced environment. Tr. 22. Plaintiff cannot demonstrate error, let alone harmful error, without explaining how the ALJ's RFC assessment failed to account for the mild and moderate restrictions set forth by Dr. Neims. *See, e.g.*, *Valentine v. Commissioner SSA*, 574 F.3d 685, 691–92 (9th Cir. 2009).

  Plaintiff has failed to demonstrate that the ALJ's evaluation of Dr. Neims's opinion was unsupported by substantial evidence or the result of harmful legal error.

**3.  Examining Psychiatrist Dr. DeLira**

  Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of examining psychiatrist Dr. DeLira. Dkt. 9, at 7–8. The Court disagrees because plaintiff has failed to demonstrate that the assessed RFC conflicts with Dr. DeLira's opinion.

  The ALJ found Dr. DeLira's opinion persuasive because it was supported by findings and was generally consistent with the evidence. Tr. 27, 443–47. Dr. DeLira opined that plaintiff had

good ability to perform simple and repetitive tasks and had a fair ability to perform detailed and complex tasks and work activities on a consistent basis. Tr. 447. She opined that plaintiff had "poor to fair" ability to perform work duties at a sufficient pace and maintain regular attendance and complete a normal workday without interruptions. *Id.* She also opined that plaintiff had a good ability to interact with coworkers, superiors, and the public and to adapt to the usual stresses encountered in the workplace. *Id.*

There is no indication that the ALJ's assessed RFC conflicted with Dr. DeLira's opinion. When assessing RFC, the ALJ determines the most one can do despite limitations, not the least one can do. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Dr. DeLira thus opined that plaintiff had up to a fair ability to maintain regular attendance, complete a normal workday without interruptions from symptoms, and work at a sufficient pace. A "moderate" mental limitation means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.00F(2)(c). This is consistent with Dr. DeLira opining that plaintiff's overall prognosis was "fair to good." Tr. 446.

Plaintiff has failed to demonstrate that the ALJ's evaluation of Dr. Neims's opinion was unsupported by substantial evidence or the result of harmful legal error.

**4. Examining Orthopedic Surgeon Dr. Staker**

Plaintiff contends that the ALJ failed to discuss or evaluate the persuasiveness of opinions by examining orthopedic surgeon Lynn Staker, M.D. Dkt. 9, at 8–9. The Court agrees that the ALJ erred by failing to address Dr. Staker's August 2017 medical opinions. The Court finds, however, that the error was harmless because the ALJ addressed the x-ray results on which Dr. Staker based his medical opinion and Dr. Staker's observations and conclusions do not conflict with the ALJ's evaluation of the medical evidence and the assessed RFC.

On August 10, 2017, Dr. Staker conducted a special examination of plaintiff for DSHS. Tr. 401–02. Dr. Staker noted that plaintiff's left elbow and wrist problems stemmed from a 2000 motorcycle accident. Tr. 401. On examination, plaintiff demonstrated a reduced range of motion and pain in his left wrist and left elbow. *Id.* On August 31, 2017, Dr. Staker conducted a follow-up examination in which he reviewed x-rays and noted moderate osteoarthritis in plaintiff's left elbow and severe osteoarthritis in his left radial carpal joint. Tr. 916; *see* Tr. 918 (Aug. 17, 2017 x-ray results). Dr. Staker concluded that plaintiff has "significant difficulty using his left hand" alongside reasons for chronic lower back pain and opined that plaintiff "will be limited to a sedentary level of work." Tr. 917.

The Court finds that the ALJ should have reviewed Dr. Staker's medical opinions. The Court thus rejects the Commissioner's suggestion that Dr. Staker's August 10 special examination and follow-up August 31 addendum did not constitute "medical opinions" in a technical sense under the regulations in force for cases filed after March 27, 2017, because the opinions did not adequately address "what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." Dkt. 12, at 8 (citing 20 C.F.R. § 404.1513(a)(2)). The Commissioner asserts that Dr. Staker's opinions constituted "other medical evidence" because they are neither "medical opinions" nor "objective medical evidence" and therefore qualify as delineated forms of medical information (e.g., medical history, clinical findings, prognosis) that need not be explicitly addressed in an ALJ's decision. Dkt. 12, at 9 (citing 20 C.F.R. § 404.1513(a)(3)). This assertion is unpersuasive because by definition Dr. Staker's opinions count both as "medical opinions" and as "objective medical evidence." Although the Commissioner is correct that Dr. Staker's opinions are broad and conclusory about plaintiff's capacity to perform only sedentary work due to, among other

reasons, limited range of motion and pain, such concerns go to the weight the opinions should be given, not to whether medical opinions directly solicited by DSHS constitute "medical opinions" at all. Moreover, it is undisputed that Dr. Staker also created "objective medical evidence" by conducting a physical examination of plaintiff and recording the results, ordering x-rays, and reviewing the x-ray results.

Nonetheless, the ALJ's error in declining to explicitly evaluate Dr. Staker's opinions is harmless because the ALJ adequately evaluated the medical evidence regarding plaintiff's left elbow and left wrist limitations, including the x-rays that Dr. Staker ordered, and the RFC of sedentary work with additional physical limitations, including overhead reaching limitations, does not conflict with Dr. Staker's conclusion that plaintiff was limited to sedentary work. Tr. 23, 25 (citing, *inter alia*, Tr. 876 (April 2018 orthopedic surgeon noting hand and wrist were stable bilaterally and sensation to light touch over the axillary, lateral antebrachial, radial, ulnar and median distributions were intact bilateral sides; normal thenar and extrinsic motor strength bilaterally; normal wrist and finger extension bilaterally; and the absence of thenar and intrinsic atrophy), 918 (August 17, 2017 findings and conclusion regarding x-ray of left elbow and left wrist by David S. Henley, M.D.)). Aside from contesting the ALJ's treatment of his symptom testimony, plaintiff has not challenged the ALJ's evaluation of the medical evidence that undermines plaintiff's allegedly disabling left elbow and left wrist pain and functionality.

Plaintiff has failed to demonstrate that the ALJ's failure to explicitly evaluate Dr. Staker's medical opinions constituted harmful error.

**5. Non-Examining Opinion of Physician Dr. Leinenbach**

Plaintiff contends that the ALJ erroneously departed from the opinion of non-examining, reviewing physician Dr. Leinenbach by finding that opinion to be persuasive and yet not

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 9

properly accounting for any manipulative limitations in the RFC based on plaintiff's left elbow and left wrist impairments. Dkt. 9, at 9–10. The Court disagrees because the ALJ accounted for the moderate manipulative limitations in the RFC assessment based on plaintiff's left elbow and left wrist issues.

In his September 2017 primarily checkbox opinion, Dr. Leinenbach reviewed the 2016 and 2017 medical reports from the Everett Clinic, Dr. Neims, and Dr. Staker and opined that plaintiff had moderate limitations regarding his left elbow and left wrist, had moderate restrictions in gross or fine motor skills, had a moderate limitation in lifting a maximum of 10 pounds, and no/mild restriction in frequently lifting or carrying small articles and sitting for most of the day while walking or standing for brief periods. Tr. 927, 929. Dr. Leinenbach therefore concluded that plaintiff was moderately limited with respect to environmental/non-exertional restrictions, postural restrictions, and gross or fine motor skill restrictions, which meant: "A sedentary work level is reasonable. The claimant should be able to lift 10 pounds without limitation." Tr. 930. The ALJ found Dr. Leinenbach's opinion to be persuasive and found that, in addition to including environmental and postural restrictions in the RFC, "an overhead reaching limitation is warranted" because "the medical evidence shows that the claimant had issues with his left elbow and left wrist." Tr. 25–26. The ALJ's evaluation of Dr. Leinenbach's opinion was consistent with the assessed RFC. Although plaintiff seeks more specific manipulative restrictions than Dr. Leinenbach actually opined, it was reasonable for the ALJ to determine that Dr. Leinenbach's opinion supported an RFC of sedentary work with a limitation on overhead reaching to account for plaintiff's left elbow and left wrist problems.

Plaintiff has failed to demonstrate that the ALJ's evaluation of Dr. Leinenbach's opinion was unsupported by substantial evidence or the result of harmful legal error.

### 6. Plaintiff's Symptom Testimony

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons for discounting his symptom allegations. The Court disagrees because the ALJ reasonably found that the evidence supported significant limitations, but not to the extent of plaintiff's allegations.

That a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it. *See Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (internal marks and citation omitted). In evaluating a claimant's testimony, the ALJ may use "ordinary techniques of credibility evaluation," such as inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. *Id.* (internal marks and citations omitted). Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p, eliminates previously applicable SSR references to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. See SSR 16-3p, *available at* 2016 WL 1119029, at *1–*2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4. While a claimant need not "vegetate in a dark room" in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. *Molina*, 674 F.3d at 1112–13 (internal marks and citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113.

The ALJ discounted plaintiff's symptom allegations because (1) they were inconsistent with his daily activities; (2) he did not comply with treatment recommendations; and (3) they conflicted with the objective medical evidence. Tr. 22–28. These were clear and convincing reasons for discounting plaintiff's symptom testimony and his alternative interpretation of the evidence, while plausible, cannot take the place of the ALJ's reasonable interpretation. *See Batson v. Commissioner of SSA*, 359 F.3d 1190, 1196 (9th Cir. 2004).

First, the ALJ reasonably discounted plaintiff's symptom allegations as inconsistent with his daily activities. Tr. 25. Plaintiff testified that his "body is like a symphony of pain" so excruciating that sometimes he wanted to cut off his left arm and so debilitating that even basic upkeep of his home and himself "takes a ridiculous amount of time" Tr. 49, 66, 71. In contrast, the ALJ noted that plaintiff testified that he can perform activities of daily living, including household chores, taking care of pets, going out his boat, and performing self-care, which supported an RFC of sedentary work with additional postural, environmental, and overhead reaching limitations. Tr. 25. Plaintiff was able to perform chores, doing half of the household duties while his wife did the other half, Tr. 59; he could go shopping for up to two hours and ride his motorcycle, Tr. 299; and even in the absence of other hobbies, he continued to go out on his boat. Tr. 60–62. Even when a claimant's activities "suggest some difficulty functioning, they

may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Second, the ALJ discounted plaintiff's symptom testimony based on his failure to comply with treatment recommendations. Tr. 24. The ALJ noted that plaintiff received a referral for routine physical therapy in February 2019 but there was no indication of a follow-up. *Id.* (citing Tr. 529). The ALJ also noted that plaintiff was recommended for a medication management plan for fibromyalgia in November 2018, but he had not started taking the meditation in December 2018, while by March 2019 he had stopped his medication management plan and was starting a new one. *Id.* (citing Tr. 896). Moreover, despite plaintiff's claims of debilitating pain, and his taking of other prescribed medications, plaintiff testified to relying for pain relief on over-the-counter Naproxen, marijuana, and simply "[d]ealing with it" due to a phobia of pills. Tr. 49–50, 73. An ALJ may discredit a claimant's allegations based on "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989).

Third, the ALJ cited a number of ways in which the objective medical evidence contradicted the severity of plaintiff's symptom testimony. Tr. 23–24. In contrast to plaintiff's claims that he could barely hold a coffee pot to pour a cup of coffee, the ALJ noted that plaintiff had normal motor strength, sensation, and reflexes in his arms and hands. Tr. 25; *compare* Tr. 74 *with* Tr. 876–77. The ALJ noted that the record regularly showed that plaintiff had a normal gait and appeared well during examination without acute distress. Tr. 23–24; *see* Tr. 433, 533, 562, 588, 631, 705, 876, 881, 896. Although it is improper to reject symptom testimony solely because it is not corroborated by objective medical evidence, medical evidence remains a

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 13

relevant factor in determining the severity of the alleged symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2).

Plaintiff has failed to demonstrate that the ALJ's evaluation of his symptom testimony was unsupported by substantial evidence or the result of harmful legal error.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 7th day of April, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge